UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

FILED/REC'D

2010 APR -2  AM 10: 22

CLERK, U.S.
BANKRUPTCY COURT

In Re:

ADAM KENNETH STEVENS and HEATHER LEIGH STEVENS,

                 Debtors,

Bankruptcy Case No: 3-09-16401-rdm

Adversary Case No: 3-10-00019-rdm

COUNTY OF LA CROSSE,

                 Plaintiff,

v.

ADAM KENNETH STEVENS and HEATHER LEIGH STEVENS,

                 Defendants.

PRETRIAL STATEMENT

## PRETRIAL STATEMENT

1.     Pretrial conference is set for April 5, 2010 at 11:30 am before the United States Bankruptcy Court at 120 N. Henry Street, Room 340, Madison, WI 53703.

2.     The facts are all admitted or uncontested and are as follows:

     a.     A paternity action was initiated in 2005 for a minor child of Heather Stevens with a court caption as follows: In re the Paternity of GMS: Paul Charles Sobkowiak, petitioner and Heather Leigh Zimmerly, n/k/a Heather L. Stevens, respondent, Case No. 05-PA-147.

     b.     On November 30, 2007 Gloria Doyle, Family Court Commissioner for La Crosse County, found that the parties had been unable to resolve the issue of custody and placement of the minor child within the mediation process and ordered a custody evaluation under Wis. Stat. §767.11(12)(b).  Bennett Meyers, Guardian ad Litem, a member of the Mediation and Family Court Services, and a child development specialist were appointed to the Custody Assessment Team to conduct the evaluation. The appointment of a custody evaluation assessment team is pursuant to La Crosse County Local Rule 908.

     c.     On January 5, 2009, Family Court Commissioner Gloria Doyle entered an order based upon the recommendation of the Custody Assessment Team.

     d.     On or about May 29, 2009, Heather Leigh Stevens filed a motion for a de novo review before the Honorable Dale T. Pasell, reviewing the order of the Family Court Commissioner as a result of the recommendation of the Custody Assessment Team.

e.    The fees at issue in this case are the Custody Assessment Team's post recommendation fees ordered by the Honorable Dale T. Pasell on August 3, 2009 in the amount of $3,993.67, which were incurred during the period of time that the de novo review hearing was pending and prior to a Stipulation and Order between the parties filed on August 13, 2009. (A copy of the Order was attached to the Complaint)

The order regarding fees provided, in part, as follows:

1.    The Custody Assessment Team's post-recommendation fees in the total amount of $3,993.67 shall be paid as follows:

| | |
|---|---|
| Bosshard Parke Ltd. | $3,331.17 |
| Mediation and Family Court Services | $225.00 |
| Kimberly Erickson-Nichols | $437.50 |
| c/o Franciscan Skemp Behavioral Health, 212 11th St S, La Crosse 54601 | |

2.    La Crosse County shall direct payment in the amounts above to the respective offices named above. Respondent Heather Stevens shall reimburse La Crosse County for the entire amount disbursed in accordance with the arrangements to be established by La Crosse County. La Crosse County will be granted judgment for any such amounts.

f.    The Stipulation and Order from La Crosse County Court, filed August 13, 2009, is attached hereto and incorporated herein as Exhibit A. The father of the child in said placement study has primary placement. The mother of the child (Heather Leigh Stevens, fka as Zimmerly) would have been the payor of child support but no child support was ordered.

g.    Defendants did not list a support obligation on Schedule E, said Schedule attached hereto and incorporated herein as Exhibit B.

3.    There are no contested facts in this matter.

4.    Each parties statements of contested legal issues.

a.    La Crosse County's Statement;

The contested legal issue is whether the fees and costs of the Custody Assessment Team incurred after a de novo appeal of a Family Court Commissioner's order and owed by Heather Stevens to La Crosse County are a domestic support obligation under 11 USC Section 523(a)(5). The County's position is that such fees and costs are in the nature of support and are a 'domestic support obligation."

b.    The Defendants' Statement:

The fees and expenses of the Custody Assessment Team and the guardian ad litem that defendant believes are dischargeable are not within the purview of the *Lockwood* case because the fees and expenses were incurred as a result of defendant Heather Stevens filing for a *de novo* hearing which was her right. No *de novo* hearing was held because Ms. Stevens was prohibitly blocked from being able to pay the $10,000 fee that the court assessed against her for her trial and by obstruction by the guardian ad litem in her discovery process. Thus all the fees that were incurred as "post-recommendation" fees were for procedural motions and orders that Ms. Stevens filed in order to prove she could not pay the $10,000 fee and in order to have access to her file for discovery purposes. All her attempts were futile and she was left with no choice but to withdraw her *de novo* request. Hence, none of these fees and costs at issue were accrued about the custody and placement of her child, but about her attempt to have a *de novo* review.

5.   Each party's statement of the theory of the case, summary of contentions of fact and evidence of contentions is attached hereto.

Dated this __31__ day of March, 2010.

LA CROSSE COUNTY

By:   _David L. Lange_

David L. Lange
Deputy Corporation Counsel
State Bar ID No. 1001937
400 N. 4th Street
La Crosse, WI 54601-3200
(608) 785-9577


HEATHER L. STEVENS AND
ADAM K . STEVENS

By:   _Joan L. Schwarz_

Joan Schwarz
State Bar ID No.
701 W. Jefferson Street
PO Box 203
Stoughton, WI 53589

BRIEF STATEMENT OF PLAINTIFF'S THEORY OF THE CASE

The Custody Assessment Team was primarily engaged to make recommendations regarding custody and placement of the children because the parents had been unable to do so. The custody determination also impacts potential child support. The fees in this case are the fees of the guardian ad litem, mediation and family court representative, and child development specialist ordered by the Court to perform a child custody evaluation.

Bankruptcy cases in the State of Wisconsin have held that guardian ad litem fees rendered in connection with support and custody issues are so intertwined with the welfare of the children that such fees are also in the nature of support and excepted from discharge. See In the Matter of Coleman, 37 B.R. 120 (Bankr. W.D. Wis. 1984); In re Lockwood, 148 B.R. 45 (Bankr. E.D. Wis. 1992).   11 U.S.C. Section 523(a)(5) now refers to a "domestic support obligation" which is owed to or recoverable by a spouse, former spouse or child of the debtor or such child's parent, legal guardian or responsible relative or a governmental unit in the nature of alimony, maintenance or support.   In this case the fees for the Team assigned to evaluate custody as part of the paternity action were ordered paid by La Crosse County, to be reimbursed by Heather Stevens for the entire amount and that La Crosse County would be granted judgment against her for the amounts due.

BRIEF SUMMARY OF CONTENTIONS OF FACTS IN
SUPPORT OF THE LEGAL THEORIES AND RELEVANT EVIDENCE

1.   On November 30, 2007 Gloria Doyle, Family Court Commissioner for La Crosse County, found that the parties had been unable to resolve the issue of custody and placement of the minor child within the mediation process and ordered a custody evaluation under Wis. Stat. §767.11(12)(b).  Bennett Meyers, Guardian ad Litem, a member of the Mediation and Family Court Services, and a child development specialist were appointed to the Custody Assessment Team to conduct the evaluation.

2.   The appointment of a custody evaluation assessment team is pursuant to La Crosse County Local Rule 908, a copy of which is attached hereto.

3.   On January 5, 2009, Family Court Commissioner Gloria Doyle entered an order based upon the recommendation of the Custody Assessment Team.

4.   On or about May 29, 2009, Heather Leigh Stevens filed a motion for a de novo review before the Honorable Dale T. Pasell, reviewing the order of the Family Court Commissioner as a result of the recommendation of the Custody Assessment Team.

5.   The fees at issue in this case are the Custody Assessment Team's post recommendation fees ordered by the Honorable Dale T. Pasell on August 3, 2009 in the amount of $3,993.67, which were incurred during the period of time that

the de novo review hearing was pending and prior to a stipulation and order between the parties filed on August 13, 2009.

## EVIDENCE FOR CONTENTIONS

It is clear that the facts support that the fees owed to La Crosse County are the result of work of the Custody Assessment Team regarding custody and placement and other issues which were incurred after a petition was filed for a de novo review hearing and prior to the final stipulation entered on August 13, 2009.

905        When the G.A.L. in a family case petitions the court for approval of his/her
           bill, in addition to providing the necessary information regarding the number
           of hours and the types of activities, the G.A.L. shall also submit an order for
           the Judge's signature providing for responsibility for the payment of the fees.
           Such petition shall additionally include a copy of the courts previous order
           requiring one or both of the parties or the county to be responsible for
           payment. It shall be the obligation of the G.A.L. to insure that the issue of
           responsibility for payment is addressed prior to the final hearing. Neither the
           clerk nor the court will search the file for such an order. If none has been
           made or none accompanied the petition for payment, no further action will be
           taken by the Clerk or the Court. The court shall immediately grant a separate
           judgment after the first missed payment for the amount of the
           reimbursement, in favor of the county and direct the G.A.L. to prepare and
           submit such judgment in a form appropriate for docketing. The clerk of court
           shall docket this judgment without fee. (2/10/89) (AMENDED 2/6/95)

906        Each party ordered to make payments for maintenance, child support or
           family support under interim or final orders in an action affecting the family
           shall pay to the Clerk of Circuit Court an annual receiving and disbursing fee.
           Only one fee shall be imposed on any individual payor for each case file.
           (8/1/92)

907        The family court commissioner shall hear the child support calendar and the
           default divorce calendar on a weekly basis. Other post judgment matters will
           be heard weekly before the family court commissioner on a regularly schedule
           basis. These post-judgment hearings shall be informal in nature. The family
           court commissioner will issue written decisions. With respect to contempt
           proceedings the family court commissioner shall conduct the hearing and send
           it to the appropriate circuit judge for approval and the issuance of an order.
           (2/6/95)

908        CUSTODY ASSESSMENT INITIATIVE - When a mediator certifies to the court
           that mediation has been attempted and failed, either party may petition for
           an assessment order. A Custody Assessment Team (CAT) consisting of the
           guardian ad litem, a child development specialist and a mediation/case
           evaluator will assess the family and make a recommendation as to a suitable
           parenting plan within 90 days.

           The team will meet with the parents to recommend a parenting plan. If the
           parents agree with the recommendation it will be incorporated into a marital
           settlement agreement (MSA) and the matter will proceed to a default hearing.
           If the parents do not agree with the recommendation, the family court
           commissioner will impose a plan and the matter will be set for trial.

           1) Upon appointment of a Custody Assessment Team, the court or family
              court commissioner shall order payment of a $4,400 deposit to the Clerk
              of Court for CAT services to be distributed as follows: guardian ad litem,
              $2,000; child development specialist, $2,000; and mediation/case
              evaluator, $400. The court or family court commissioner in its discretion
              shall have the right to determine the payment schedule, which party(ies)
              shall pay the deposit, and the minimum monthly payment allowable.

           2) All orders resulting from a CAT recommendation shall include that the

time for a de novo review of the order must be filed with the clerk of circuit court no later than 60 days from the date of the recommendation hearing.

3) Any party requesting a de novo review from an order of a CAT recommendation hearing shall be prepared to make a minimum deposit in the amount of $5,000 to the Clerk of Court to be applied to the costs of the post-hearing work of the Custody Assessment Team.  If any party is financially unable to make a prepayment, the court may waive all or part of the deposit based on the inability to pay.  The court, in its discretion, may direct that either party reimburse the county, in whole or in part, for the deposit.  The court may, in its discretion, grant a separate judgment for the amount of the reimbursement in favor of the county and direct one of the attorneys to prepare and submit such judgment in a form appropriate for docketing.

4) Upon request of a de novo review from an order of a CAT recommendation hearing, the circuit court shall set a scheduling conference as soon as practicable after the filing for the purpose of:
   a.  identifying the issues for review;
   b.   reappointing the CAT team and establishing their hourly rate for post-hearing work;
   c.  setting the prepayment amount, timing of payment, and person(s) responsible for payment;
   d.  scheduling a final pre-trial date within 60 days; and,
   e.  scheduling a trial date.

5) The final pre-trial on a de novo review from an order of a CAT recommendation shall result in dates for all pre-trial matters, including but not limited to: disclosure of all witnesses, discovery deadlines, and pre-trial motions.  In addition, this final pre-trial shall be the time at which the guardian ad litem advises the court of any request for additional deposits to cover costs for the trial preparation of the Custody Assessment Team.

(2/6/95)  (AMENDED 10/8/99) (AMENDED 05/01/05)

910      All marital settlement agreements must be approved by the family court commissioner prior to filing with the clerk of court. (2/6/95)

911      In all paternity cases, the Court shall order the mother and father to complete the parenting program for never married parents offered by Family Resources of La Crosse.  At the conclusion of the program, the parents shall submit to the Family Court Commissioner a parenting plan which includes a specific plan for placement.  The Family Court Commissioner shall review the plan at a hearing and adopt it as an order of the Court.  If the parties cannot reach agreement on a plan, they shall be referred to mediation under rule 902 and if that is not successful to a custody assessment team under rule 908. (Amended 1/19/99)

912      Unrepresented parties in divorce proceedings shall use the pro se divorce forms available from the clerk of circuit court or forms that are identical in content. (1/9/04)

## BRIEF STATEMENT OF DEFENDANTS' THEORY OF THE CASE

**Please Note that said Statement includes Adam Kenneth Stevens even though he was not subject to the La Crosse County Order at issue in the Adversary Complaint.**

## Brief Statement of Defendants' Theory of the Case:

In the bankruptcy filing, defendants did not try to discharge a domestic support obligation, as alleged by the plaintiff, the County of La Crosse. While *In Re Lockwood*, 148 B.R. 45 (Bankr. E.D. Wis. 1992), the court states that guardian ad litem fees rendered in connection with support and custody issues are so intertwined with the welfare of the children that such fees are also in the nature of support and excepted from discharge, said case is not dispositive of the instant case for the following reasons:

If one reads the Order for Fees and Discharge of Custody Assessment Team, one can see that the fees and costs at issue in the bankruptcy that petitioner believes should be discharged are **not** for the custody and placement study itself or for the guardian ad litem services during the study. In fact, the fees and costs are directly related to Heather Stevens' request for a *de novo* hearing of the CAT Recommendation. A *de novo* hearing is her right to have a judge review anew the recommendations from the court commissioner. Attached hereto and incorporated herein is the Order for Fees and Discharge of Custody Assessment Team, marked as Exhibit A.

The Order confirms this point about the fees incurred were for "post-recommendation" actions. It states, as follows:

## FINDINGS OF FACT:

**Para. #1:**    "The parties have submitted, and the Court has approved, a Stipulation and Order resolving all of the substantive issues regarding custody and placement of the minor child, and dismissing all of Respondent's requests for de novo review in this matter. *The only remaining issue is that of the fees and costs of the Custody Assessment Team stemming from work performed subsequent to the recommendation hearing*" (emphasis added).

In other words, the Order clearly states that the fees and costs at issue are not for the custody and placement study itself. The CAT Team and the guardian ad litem had been paid in full for the study and the recommendation presented to the court. The fees and costs in question were incurred because of obstruction she received in trying to prepare for the *de novo* hearing before a judge that she had requested.

The Order also confirms that the court ordered these fees and costs to be paid by Heather Stevens because it believed that in her requesting a *de novo* hearing, she had engaged in "an unusually high degree of litigation," as stated below:

1

**Para. #2:**

"This matter has been marked by an *unusually high degree of litigation surrounding both the central issues of custody and placement of the minor child as well as a series of related issues raised by respondent. The multiple requests for de novo review filed by respondent, including from the order of the Family Court Commissioner providing for the payment of Guardian ad Litem fees, and voluminous correspondence and hearings that has attended these requests, are largely responsible for the expense of post-recommendation proceedings in this mattter*" (emphasis added).

First of all, the guardian ad litem had been paid for his fees regarding the custody and placement study. Secondly, Heather Stevens filed only one request for a *de novo* hearing. That is all one needs to have one scheduled.

Third, the court ordered that she had to pay $10,000 for her right to have a *de novo* hearing, even though pursuant to La Crosse County Local Rule 908 (3), the minimum deposit is $5,000. No explanation was given by Judge Pasell as to why my client was required to pay $10,000 for her right to have a hearing *de novo* before the judge. Part of La Crosse County Local Rule 908 (3) states that "If any party is financially unable to make a prepayment, the court may waive all or part of the deposit based on the inability to pay." (NOTE: The La Crosse County local rules are attached to Attorney Lange's statement). My client had many health problems and had not been employed for many years and was a stay-at-home mother with two children from a former marriage as well. She presented her Financial Disclosure Statement to the court, showing that she was unemployed and thus had no ability to pay. A long hearing was held on this issue, but my client was still ordered to pay the prohibitive $10,000 fee.

Because she felt the entire process was unfair to her, especially since the fee was not waived due to her inability to pay, she, through her attorney, wrote to the Chief Judge, Judge Dyke, and the Judicial Council, in which she raised several issues, such as the issue of her requesting a new guardian ad litem for the *de novo* hearing because he was an inexperienced and ineffective guardian (it was his first case as guardian ad litem). Despite Ms. Stevens filing for his removal and replacement for the *de novo* hearing, her motion was dismissed. The summary to Chief Judge Dyke refers to the guardian's lack of follow-through about serious concerns about the minor child; lack of follow-through on Ms. Steven's collateral witnesses; lack of follow-through keeping his records in order (he filed motions against her for documents she had already provided him); and numerous personal insults and accusations directly to Ms. Stevens in the course of the study, as well as obstruction in the discovery process for the *de novo* hearing. The summary also detailed the conflict of interests in La Crosse County with the commissioners who sometimes are the attorney for a party and other times are the commissioners. The Chief Judge and Judicial Commission chose not to look into any of the matters. The summary sent to Chief Judge Dyke and the Judicial Commission is attached hereto and incorporated herein as Exhibit B.

2

The guardian ad litem made it clear in a letter dated June 4, 2009 that he and the CAT Team were "ceasing work on this file and will resume preparation for the de novo hearing, including your inspection of the Team file, once the deposit is made." Said letter is attached hereto and incorporated herein as Exhibit C.

Still hoping that she could proceed with the *de novo* hearing, I, as her counsel, tried to conduct discovery but was obstructed by the guardian ad litem. I had been told by the CAT Team that I could review the file so I drove from Madison to La Crosse to review the file, only to be denied the review because the guardian ad litem said the fee had not been paid and I therefore could not see the file.    Ultimately, though, I was allowed limited review of the file after the CAT Team and the guardian ad litem removed some documentation from the file.  Of that which was left to review, I was allowed to copy only some of the documentation.  More attorney and CAT fees ensued because they were blocking my client access to her file.

Thus, Included in the "fees and costs" that my client is attempting to discharge are fees that were incurred because she legitimately tried to prove the following:

1) She could not afford the $10,000 fee;
2) She should have a new guardian ad litem appointed due to his inexperience; and
3) She should have had full access to entire CAT file.

In the end, my client could not come up with the $10,000 fee for her *de novo* hearing and she reluctantly agreed to withdraw her request for a *de novo* hearing and entered into a stipulation with the father of the child.    Attached hereto and incorporated herein is the Stipulation and Order that my client had to enter into when she realized that she could not afford the $10,000 fee, marked as Exhibit D.

After the stipulation was filed, the court held a hearing on the "post-recommendation proceedings in this matter" and assigned all the fees to my client (Exhibit A).

My client was denied not only her right to a *de novo* hearing to have primary placement of her three-year old daughter (which she had had for the first two (2) years of her daughter's life) returned to her, but she then was ordered to pay the fees of the guardian ad litem and the CAT Team who were the very persons putting up road blocks from my client's trying to prepare for the *de novo* hearing.

*Lockwood* does addresses that guardian ad litem fees incurred for custody and placement issues are within the meaning of "support" and thus are not dischargeable in a bankruptcy proceeding. In this case, however, my client was in essence denied her right to a *de novo* hearing because she could not afford it and she was prevented at every turn to prepare for the hearing.   In essence, then the fees and costs at issue were all procedural and were incurred "post-recommendation" to the custody and placement order issued by the commissioner.

3

Hence, in this case, the fees and costs should not be considered "support" pursuant to *Lockwood*, as they were incurred when my client tried to have a hearing before a judge about her rights and was forced to abdicate her right to a hearing.    She also had no money to appeal the decision regarding the $10,000.    That is the essence of lack of due process.    Hence, she should be able to discharge these fees and costs as they were incurred in her futile attempt to have the trial that she was entitled to under the law.

## Evidence for Contentions:

1.  Exhibit A:    Evidence for the Order for Fees and Discharge of CAT Team;
2.  Exhibit B:    Evidence of Summary to Judge Dyke and the Judicial Commission;
3.  Exhibit C:    Guardian ad Litem June 4, 2009 letter stating $10,000 fee is due;
4.  Exhibit D:    Stipulation and Order, agreeing to withdraw *de novo* motion; no child Support; and stipulation to Commissioner's Order for custody and placement.

4

EXHIBIT
A

Attorneys and Counselors at Law

Serving Businesses and Families Since 1900

Wisconsin | Minnesota | Iowa

John Bosshard (1920-1990)
Sabina Bosshard
George Parke III
Joseph J. Connell
Laura J. Seaton
Stephan A. Ragge

Howa̲
Mary ᵃ
Jason Goldstein
David A. Krzoska
Andrew R. Bosshard
Bennett A. Myers

# bosshard | parke ltd.

August 26, 2009

Attorney Mark Huesmann
Huesmann Law Office SC
501 Empire St # 102
PO Box 50
Holmen, WI 54636-0050

Attorney Joan Schwarz
Schwarz Law Office
701 West Jefferson Street
PO Box 230
Stoughton, WI 53589-0203

**RE: Paul Sobkowiak and Heather Zimmerly**
    **Case No.: 05-PA-147**

Dear Counsel:

Enclosed please find a fully conformed copy of the Order for Fees and Discharge of Custody
Assessment Team in regard to the above-captioned matter.

Sincerely,

**BOSSHARD PARKE, LTD.**

*Bennett Myers*

Bennett A. Myers

BAM/lb

Enclosure
cc:    Bonnie Sacia
       Kimberly Erickson-Nichols

**www.bosshardparkelaw.com**

**Main Office**
P.O. Box 966
505 King, Suite 334
La Crosse, WI 54602-0966

608.782.1469
Fax: 608.784.1561

**Branch Office**
100 S. Water St.
Sparta, WI 54656
608.269.5076
Fax: 608.269.5077

STATE OF WISCONSIN          CIRCUIT COURT          LA CROSSE COUNTY
                            Family Court Branch

In re the Paternity of GMS:

Paul Charles Sobkowiak,

   Petitioner,
                AUG 14 2009

-and-
        La Crosse County WI
         **F I L E D**

Heather Leigh Zimmerly,
       AUG 24 2009
 *n/k/a* Heather L. Stevens
      PAMELA RADTKE  Case No. 05-PA-147
      CLERK OF COURTS

   Respondent.

---

## ORDER FOR FEES AND DISCHARGE OF CUSTODY ASSESSMENT TEAM

This matter came on for hearing before the Honorable Dale T. Pasell, Family Court Commissioner, on the 3rd day of August, 2009. Petitioner's attorney, Mark Huesmann, of HUESMANN LAW OFFICE, S.C., 501 Empire Street, Suite 102, P.O. Box 50, Holmen, WI 54636-0050 appeared in person. Petitioner, Paul C. Sobkowiak did not appear. Respondent's attorney, Joan Schwarz, of SCHWARZ LAW OFFICE, 701 West Jefferson Street, P.O. Box 230, Stoughton, WI 53589-0203 appeared by telephone. Respondent, Heather L. Zimmerly did not appear. Attorney Bennett Myers, Guardian ad Litem, appeared in peson on behalf of the Custody Assessment Team. Attorney David L. Lange appeared on behalf of La Crosse County.

### *FINDINGS OF FACT*

1.  The parties have submitted, and the Court has approved, a Stipulation and Order resolving all of the substantive issues regarding custody and placement of the minor child, and dismissing all of Respondent's requests for de novo review in this matter. The only remaining issue is that of the fees and costs of the Custody Assessment Team stemming from work performed subsequent to the recommendation hearing in this matter.

2.  This matter has been marked by an unusually high degree of litigation surrounding both the central issues of custody and placement of the minor child as well as a series of related issues raised by Respondent. The multiple requests for de novo review filed by Respondent, including from the order of the Family Court Commissioner providing for the payment of Guardian ad Litem fees, and the

the voluminous correspondence and hearings that has attended those requests, are largely responsible for the expense of post-recommendation proceedings in this matter. Because Respondent has exhibited a high degree of contentiousness and litigiousness throughout the post-recommendation phase of this matter, which has led to the escalation of expenses, and because Petitioner has not exhibited any similar litigiousness or contentiousness, the Court finds it reasonable that Petitioner should pay the post-recommendation fees and costs of the Custody Assessment Team.

3.    The fees and costs submitted to date by the Guardian ad Litem, Bonnie Sacia, and Kimberly Erickson-Nichols are reasonable under the circumstances of this case.

## ORDER

1.    The Custody Assessment Team's post-recommendation fees in the total amount of $3,993.67 shall be paid as follows:

| | |
|---|---|
| Bosshard Parke Ltd. | $3,331.17 |
| Mediation and Family Court Services | $225.00 |
| Kimberly Erickson-Nichols | $437.50 |

c/o Franciscan Skemp Behavioral Health, 212 11th St S, La Crosse 54601

2.    La Crosse County shall direct payment in the amounts above to the respective offices named above. Respondent Heather Stevens shall reimburse La Crosse County for the entire amount disbursed in accordance with arrangements to be established by La Crosse County. La Crosse County will be granted judgment for any such amounts.

3.    Effective immediately, the Custody Assessment Team is released from its duties, and Attorney Bennett Myers, BOSSHARD PARKE LTD., is discharged as Guardian ad Litem for the minor child.

Dated at La Crosse, Wisconsin this ___ day of August, 2009 *nunc pro tunc* August 3, 2009.

BY THE COURT:

8-24-09

_____
Honorable Dale T. Pasell
Circuit Court Judge

EXHIBIT
B

**STATEMENT OF HEATHER ZIMMERLY, N/K/A STEVENS**
**LA CROSSE COUNTY CASE NO. 04 FA 280**

I.    **PURPOSE FOR LETTER TO CHIEF JUDGE DYKE:**

A Recommendation Hearing regarding physical placement of a minor child was held in La
Crosse County on January 5, 2009.  The Recommendations made by the Assessment Team
and Guardian ad Litem did not follow the standards of Sec. 767.451(2)(a)(b), Wis. Stats., but
were nonetheless ordered in their entirety by the Court Commissioner.  There were many
irregularities with this case:  the way in which the Custody Assessment Study was done; the
length of time it took;  the way the Guardian ad Litem conducted himself; and the way the
court decided this case.   Because of the irregularities, Heather Zimmerly, n/k/a Stevens,
believes she needs this matter reviewed by the Chief Judge before she files her *de novo*
appeal, especially since it is so costly to file *de novo* in La Crosse County ($5,000).

A.   **FACTS:**

This is a paternity action between Heather Zimmerly, n/k/a Stevens and Paul Sobkowiak
and their child, Gracie Sobkowiak, dob October 27, 2005.  Heather gave birth over Paul's
objections (he wanted her to abort) and she raised Gracie for almost one year on her own.
Paul was adjudicated as Gracie's father and the parties entered into a Stipulation wherein
the parties shared joint custody and equal placement since July 19, 2006   At the time of the
January 5, 2009 hearing when the Assessment Team entered into Report and
Recommendation, the parties had been sharing equal placement for 2 ½ years.  Ms.
Zimmerly had her daughter most weekdays (one week Monday through Thursdays and the
next week Monday through Fridays) and Mr. Sobkowiak had alternative Thursday/Friday
placement with weekend placement, returning on Mondays).

B.   **HEATHER ZIMMERLY'S REQUEST FOR A HEARING ABOUT THE DELAY IN FINAL REPORT**
**AND RECOMMENDATION OF CUSTODY ASSESSMENT TEAM:**

The Custody Team and Assessment were ordered on December 7, 2007.  The Custody Team
did not complete its study until one year and two (2) months later until December 26, 2008,
and then only after  Heather Zimmerly requested a hearing about the delays with the study
and the conduct of said study.  One of her most serious concerns raised at this hearing was
that the counselor, Bonnie Sacia, had called her a liar several times during the course of the
study and continually disputed statements and documentation that Ms. Zimmerly told and
had given to Ms. Sacia.  Ms. Zimmerly also had many witnesses at this hearing who had
been listed as her collaterals but who were not interviewed during the year-long study, but
none of them were allowed to testify.   Since Ms. Sacia is the only counselor available for
such a study, Heather Zimmerly did not even have the option of requesting a different
counselor.

1

At the hearing requested by Heather Zimmerly about the irregularities and delays in the Assessment Study , the Court Commissioner Gloria Doyle did not even question Ms. Sacia about Ms. Zimmerly's allegations, especially about calling her a liar.

At this hearing, Ms. Zimmerly also raised as a serious concern  the Guardian ad Litem's ineffective counsel for the minor.   Heather Zimmerly raised numerous concerns throughout the year of the study to Attorney Myers about the living conditions at Mr. Sobkowiak's house; about the amount of time her daughter was at a babysitter's, not only while the father was working, but on weekends when he had placement with her;  the quality of care she was receiving when she was at the babysitter's for long hours day in and day out when Ms. Zimmerly is a stay-at-home mother;  the swearing that occurs at the father's house and the babysitter's houses and which her daughter of three (3) has now learned;  her daughter's refusal to eat healthful food when she returns to Ms. Zimmer y's house because all she wants is candy and cookies;  the father's drinking problems;  the father's judgment about placing a picture of the minor child with him on a dating site;  and the father's refusal to do his own exchanges of which he is capable but sends his sister, leading to many confrontations at the exchanges, one of which escalated to the point of police involvement. The many problems at the exchanges could have been avoided had Mr. Sobkowiak done his own exchanges.

Attorney Myers essentially was nothing more than a reporter of events, following up rarely with any of Ms. Zimmerly's concerns, and on the rare occasions he did follow up, worked only in concert with the counselor Bonnie Sacia of the CAT Assessment Team, rather than acting in his own capacity as  an effective Guardian ad Litem whose responsibility was to investigate these concerns, act accordingly and protect the interests of the minor child.

 Despite Ms. Zimmerly raising all these concerns about the care of her child and the lack of response from Bonnie Sacia and Attorney Myers, Commissioner Doyle concluded that the Assessment Team and Guardian ad Litem were fair and would be fair in their Recommendations.

## C.  HEATHER ZIMMERLY'S LEGAL HISTORY IN LA CROSSE COUNTY:

Heather Zimmerly has been seriously concerned about just how difficult it is for her to receive any objective hearing in La Crosse County.   Ms. Zimmerly has been in the La Crosse County court system for years, beginning when her birth father  lost custody of her years ago when she was  a child with the result being that she was placed in many foster homes as a child.  She then was divorced in La Crosse County in June 6, 2003 (Case No. 04 FA 280) and had to appear before Commissioner Doyle for numerous post-divorce mattes.  In said Case No. 04 FA 280, in a matter recently filed by her former husband, his attorney is a La Crosse Court Commissioner herself, Attorney Beverly Fleischman.  In a court conference call with, Heather's attorney, Attorney Fleischman, and Commissioner Doyle, Attorney/ Commissioner

2

Fleischman and Commissioner Doyle engaged in personal conversation while Ms. Zimmerly's attorney was on the call trying to conduct the purpose of the conference

In the paternity action at issue, Ms. Zimmerly has once again been before Commissioner Gloria Doyle. The attorney for the father of the child is another La Crosse County Court Commissioner, Attorney Mark Huesmann.

Ms. Zimmerly's attorney, Attorney Joan I. Schwarz, is an experienced family law attorney who usually practices in Dane and Rock County and is therefore from outside La Crosse County. She found many irregularities with the way the La Crosse County court and personnel conducted its court procedure this year and wrote numerous letters to Ms. Sacia, Guardian ad Litem Bennett Myers and Court Commissioner Gloria Doyle, mostly to no avail.

As an experienced family law attorney, many of her cases involve Dane County family studies with the Family Court Counseling Service and with guardians ad litem wherein attorneys apprize the counselor and guardian ad litem, if necessary, of serious concerns that need to be addressed regarding the parties and the minor children. Never in her lengthy career as a family court attorney has she been told by a court that advising the counselor or guardian ad litem about said concerns was trying to "micro manage" the case, as Commissioner Doyle told her at the hearing on January 5, 2009. This attitude by the Court Commissioner and the close familiarity inside the La Crosse County courthouse of the officials involved in Ms. Zimmerly's case(s) has the appearance, if not the reality of, many conflicts of interest and none of the objectivity that Ms. Zimmerman deserves.

II.    **FINAL RECOMMENDATION BY THE CUSTODY TEAM AND ORDER OF THE COURT:**

The Custody Team's Final Report and Recommendation was finally issued on December 26, 2008. The Guardian ad Litem did not issue his Recommendations until the day of the hearing on January 5, 2009. The entire report and Recommendations are attached hereto and incorporated herein as Exhibit A.

The Custody Team and Guardian ad Litem recommended and the court ordered in its entirety that Ms. Zimmerly be reduced from 50% shared placement time to 27% (8 overnights) until July 2010 and then to 7% (4 overnights) after July 2010, and provided the father of the child primary placement.

A.    **HEATHER ZIMMERLY'S OBJECTION TO THE FINAL REPORT AND RECOMMENDATION OF CUSTODY ASSESSMENT TEAM:**

Heather Zimmerly submitted a detailed Response, objecting to the numerous errors in said Report which is attached hereto and incorporated herein as Exhibit B.

3

B. *DE NOVO* REQUEST DEADLINE:

Pursuant to local La Crosse County rules, Heather Zimmerly has until March 5, 2009 to request a *de novo* hearing which she intends to do.

III.    STATUTORY ANALYSIS OF CAT TEAM'S ASSESSMENT AND COURT ORDER:

A. <u>Custody Team's Analysis:</u>

The Custody Assessment Team stated in their Final Report and Recommendation that they followed Sec. 767.451(2)(a), Wis. Stats. and stated that "the statutory requirement under Sec. 767.451(2)(a) , Wis. Stats., is solely that such change be in the best interest of the child" (Final Report p.7, herein after "Report").    The Team then stated that its analysis was under the **Sec. 767.41(5)**, Wis. Stat., factors.

Sec. 767.451(2)(a) states the following:

(a)   If the parties have substantially equal periods of physical placement pursuant to a court order and circumstances make it impractical for the parties to continue to have substantially equal physical placement, a court, upon petition, motion or order to show cause by a party, may modify the order if it is in the best interest of the child.

At the Recommendations hearing on January 5, 2009, Ms. Zimmerly's attorney, Attorney Joan I. Schwarz, asked the court pursuant to what standard the Recommendation had been conducted.

a)   The Guardian ad Litem Bennett Myers answered the court that the standard was the "best interest" standard;

b)   The counselor Bonnie Sacia stated that the Team had used the "best interest" standard; and

c)   Mr. Sobkowiak's attorney (and court commissioner), Mark Huesmann, stated that he assumed that Sec. 767.451 (1)(b),  Revision of Legal Custody and Physical Placement, After 2-Year Period,  was used.

Ms. Zimmerly's attorney first questioned on what basis the Assessment Team had assumed that Sec. 767.451(2)(a), Wis. Stats., had been met (i.e., that continuing the substantially equal periods of physical placement pursuant to a court order was "impractical")?

Having not provided evidence that Sec. 767.451(2)(a), Wis. Stats. had been met, Ms. Zimmerly's attorney then questioned why Sec. 767.451(2)(b), Wis. Stats., had not been addressed in the study.   Said section states the following:

(b)   In any case in which para. (a) [Sec. 767.451(2)(a)] does not apply and in which the parties have substantially equal periods of physical placement pursuant to a court

4

order, a court, upon petition, motion or order to show cause of a party, may modify
the order based on the appropriate standard under sub (1). However, under sub
(1)(b), there is a rebuttable presumption that having substantially equal periods of
physical placement is in the best interest of the child.

Specifically regarding Sec. 767.451(2)(b), Wis. Stats., Ms. Zimmerly's attorney
questioned on what basis had the Assessment Team determined that the rebuttable
presumption of "having substantially equal periods placement is in the child's best
interest" had been overcome.

**B.  Commissioner Doyle's Order:**

Without any analysis or finding regarding the correct statute under which this case
should have proceeded, Court Commissioner Gloria Doyle stated it did not matter
which statutory section was followed since, as she stated, "the status quo has been
rebutted." Not only did Commissioner Doyle not address the statutory basis of what
made substantially equal physical placement "impractical" under Sec. 767.451(2)(a),
Wis. Stats., but she also did not address how the rebuttable presumption stated in Sec.
767.451(2)(b), Wis. Stat., had been rebutted. It appears from her lack of analysis that
she just assumed that the presumption had been rebutted and proceeded to order the
entirety of the Custody Assessment Team's Recommendations. None of this hearing
was recorded.

**C.  Relevant Case Law:**

Case law contradicts Commissioner Doyle's Order. Under *Goembel v Goembel*, 208
N.W. 2d 416, 60 Wis. 2d 130 (1973): Transfer of custody of child from a mother to the
father constituted an abuse of discretion where there was no substantial and material
change of circumstances with regard to the fitness of the mother or the welfare of the
child which would justify such a transfer.

Also in *Marotz v. Marotz*, 259 N.W.2d 524, 80 Wis. 2d 477 (1977), the court held that in
full scale custody hearings, all parties seeking custody of minor children have an equal
burden of proving the best interests of the child will be promoted by granting custody to
them, but in redetermination hearings, party seeking a change of custody must
demonstrate not only fitness to care for child, but a material change in circumstances
which theretofore had existed.

Finally, in *Landwehr v Landwehr*, 715 N.W.2d 180, 291 Wis. 2d 49 (2006), the court held
that the statute instructing courts to maximize the time child spends with each parent
within the physical placement schedule requires courts to maximize the amount of time
within an overall placement schedule and take into consideration the best interest of
the child, the rebuttable presumption that the status quo placement schedule is in the
child's best interest, the general factors listed under statute governing custody and

5

physical placement, and the particular factors listed in that statute, when relevant to
the child.

Court Commissioner Gloria Doyle did not follow the statutes or case law in Ms.
Zimmerly's case, specifically, not addressing the following issues in said redetermination
hearing:

   a)  Whether or not there was a "substantial and material change of circumstances with
       regard to the fitness of the mother or the welfare of the child which would justify
       such a transfer" and what specifically were the substantial and material change of
       circumstances and what specific facts addressed Ms. Zimmerly's "fitness to care for
       [her] child" (or unfitness, as the decision seems to imply);

   b)  Whether or not the Recommendations "*maximized* the time the child spends with
       each parent" (emphasis added);  on what basis Ms. Zimmerly's 50% placement was
       being reduced to 27% until July, 2010 and then 7% thereafter;  and if such drastic
       reduction in placement of the child with her mother was in the minor child's best
       interest.

   c)  Whether or not the "rebuttable presumption that the status quo placement
       schedule is in the best interest of the child" had been overcome and specifically
       stating how it had been overcome.

IV.  **ANALYSIS OF FACT IN LIGHT OF THE STATUTES:**

As stated above, the minor child is only three and a half (3 ½ ).   Ms. Zimmerly gave birth to
the minor child alone, the father denying that he was the father.    Finally, after adjudication
of paternity, a shared physical placement scheduled was ordered on July 19, 2006.  The
Assessment was ordered on December 4, 2007.

A.  **Section 767.451(2)(a):**

The Custody Assessment discussed Ms. Zimmerly's change of residences, even though the
Team did not state correctly the moves and addresses at which Ms. Zimmerly allegedly lived
(See Exhibit B for the correct statement of Heather's residences).   The key issue here is that
the "change of residence" that the Team apparently seems to rely upon as the alleged
"impracticality" of continuing substantially equal periods of physical placement is not
supported by the evidence.

Ms. Zimmerly lived in Holmen at the time of the birth of the minor child in 2005 as did Mr.
Sobkowiak.   On July 4, 2006, Ms. Zimmerly moved to Onlaska, just three (3) blocks from
her previous address in Holmen.    Because of a confrontation that occurred with Mr.
Sobkowiak, Ms. Zimmerly moved from Onlaska to Baraboo  where her father lives which

6

was a distance of 133 miles. The parties continued their shared physical placement schedule despite the move.

On October 12, 2007, Ms. Zimmerly informed Mr. Sobkowiak of her impending move to Adams, WI to live with her future husband whose employment is in Adams County. The distance between the parties was then reduced to only 88 miles. The shared physical placement schedule continued with each of them, or others, sharing the driving.

The Custody Assessment Team alleged in its Recommendations that Ms. Zimmerly's "sudden" move to Adams removed the minor child from her "home," meaning Mr. Sobkowiak's residence. The problem with this interpretation is that the minor child, at that time, had two (2) homes, both Ms. Zimmerly's and Mr. Sobkowiak's residences. Furthermore, it was not a precipitous "sudden" move, implying that Ms. Zimmerly did not take into consideration the on-going relationship of her daughter with her father. Rather, she spoke with Mr. Sobkowiak about her move to Adams with her future husband whose employment is in Adams County. When the parties married on May 21, 2008, they purchased a home in Adams where the minor child has her own bedroom and play room. In other words, Ms. Zimmerly's move to Adams was not a circumstance that made "it impractical for the parties to continue to have substantially equal physical placement."

Thus, there was no "substantial change in circumstances" from when the initial physical placement schedule had been in effect, as the parties continued their shared placement when Ms. Zimmerly lived in Onlaska, Baraboo and Adams. In fact, Ms. Zimmerly's move to Adams in October, 2007 made the shared placement even closer than when she lived in Baraboo.

The Court Commissioner, however, did not make Findings pursuant to this statutory section nor found that Ms. Zimmerly's living in Adams, WI made substantially equal periods of physical placement "impracticable" or not. The court needed to find that reducing the distance between the parents from 133 to 88 miles constituted a "material change in circumstances" and made it "impractical" for placement to continue when, in fact, it had been continuing the entire time the parties had equal shared placement and the distance between was even closer. The court made no such finding.

**B. Section 767.451(2)(b):**

Since pursuant to Sec. 767.451(2)(a), Wis. Stats., substantially equal periods of physical placement are not "impracticable," given that the parties live only 88 miles from each other and the substantially equal periods of physical placement continued throughout the study, then Sec. 767.451(2)(b), Wis. Stats., becomes operative. Thus, the Custody Assessment Team needed to provide evidence that the rebuttable status quo presumption of substantially equal periods of placement being in the best interest of the child had been rebutted.

7

Likewise, and more importantly, the Court Commissioner needed to have made Findings to this effect under Sec. 767.451(2)(b), Wis. Stats. As noted above, the Commissioner Doyle merely stated that the "status quo" presumption had been rebutted without any reference to the statutory premises. In other words, the court did not find any "substantial and material *change of circumstances* with regard to the fitness of Ms. Zimmerly or the welfare of the minor child to justify such a transfer, pursuant to *Goembel v. Goembel*, 60 Wis. 2d 130 (1973).

Neither did the Commissioner Doyle, pursuant to *Marotz v. Marotz*, 80 Wis. 2d 477 (1977), make any Findings that in this redetermination hearing, that the there had been any change regarding Ms. Zimmerly's "fitness to care for the child," nor any finding that there had been a "material change in circumstances which theretofore had existed."

Finally, and most importantly, Commissioner did not, pursuant to *Landwehr v Landwehr*, 291 Wis. 2d 49 (2006), *maximize* the time the child spends with each parent within the physical placement schedule, as *Landwehr* held that courts were supposed to do, taking into consideration the best interest of the child, the rebuttable presumption that the status quo placement schedule is in the child's best interest, the general factors listed under statute governing custody and physical placement, and the particular factors listed in that statute, when relevant to the child.

In other words, instead of maximizing the time that each party had with the minor child, pursuant to the presumption that the "status quo placement is in the child's best interest," Commissioner Doyle *significantly reduced* Ms. Zimmerly from a 50% placement schedule to a 27% placement schedule (every other weekend, Friday and Saturday overnights) and two (2) overnights on Wednesdays and Thursdays every other week) and then only until June, 2010, at which time, Commissioner Doyle *further reduced* Ms. Zimmerly's placement with her child to only 7% (every other weekend, Friday and Saturday overnights with the provision that if she moved back to La Crosse County she could have a four-hour block with her child one day each week, but no additional overnights).

This drastically reduced placement schedule has been in effect since January 5, 2009 and the minor child has been removed from her mother's care. Since Ms. Zimmerly is a stay-at-home mother with sole custody of two older children from her former marriage, the minor child had been with her mother on a daily basis for 50% of her life and has now been limited to seeing her only eight (8) overnights a month.

Mr. Sobkowiak, on the other hand, who works full-time, has placed the minor child in day care since the January 5, 2009 hearing without consulting Ms. Zimmerly as to his choice of day cares, even though the parties have joint custody. The Heart of Holmen Day Care received the maximum fine in January, 2003 for failure to supervise, considered a serious licensing violation, as a five-year old child left the center and walked home without day-care employees noticing he was gone. Furthermore, Mr. Sobkowiak has not even listed Ms.

8

Zimmerly as the emergency contact for her own child. He instead listed his sister and niece who are the minor child's babysitters.    Finally, he has been transporting the minor child without the appropriate child seat, a serious danger for the child.

In addition, Ms. Zimmerly has just learned that Mr. Sobkowiak's sister has taken her daughter to the doctor. Mr. Sobkowiak has not informed Ms. Zimmerly of the outcome of this medical appointment. During the study, this sister also took Ms. Zimmerly's daughter to a clinic and authorized treatment as her "mother." Ms. Zimmerly informed the Attorney Myers of this situation but nothing was done about this misrepresentation by Mr. Sobkowiak's sister.

Further, Ms. Zimmerly also just learned that Mr. Sobkowiak has made a dental appointment for her daughter but did not inform her, even when Ms. Zimmerly has informed him of a dental appointment that she had made for her daughter.

The situation with Ms. Zimmerly's child has changed radically just since the date of the CAT hearing on January 5th in that Mr. Sobkowiak had literally cut Ms. Zimmerly off from decisions about her daughter even though they have joint custody. The change for the minor child has been abrupt in that she is no longer with her mother almost all week long and is now in day care and she clings to her mother when she is with her and especially when she has to leave her mother's home after short periods of placement.

### C.  CHILD SUPPORT HEARING:

As a result of the change in placement, Mr. Sobkowiak filed for child support and the hearing was held on January 30, 2009. Ms. Zimmerly held off on filing this Report with the Chief Justice until the child support hearing was over. No child support was ordered.  Since Ms. Zimmerly is unemployed, the court imputed income to her of $8.00 an hour and calculated in her sole custody of her two (2) other children. Even with said calculations, Ms. Zimmerly owed no support. However, Commissioner Gloria Doyle placed a "Seek Work" Order on Ms. Zimmerly, ordering that she must apply for five (5) days per week and report said applications to Attorney Huesmann bi-weekly.  Ms. Zimmerly, of course, has been a stay-at-home mom for her older two children and for her daughter and has not needed to work. The Seek-Work Order, of course, is premised on the fact that Ms. Zimmerly no longer has her daughter 50% of the time.

### D.  COST OF *DE NOVO* APPEAL:

Ms. Zimmerly does not believe Commissioner Doyle's Order should stand; yet, she does not have $5,000 to file for a *de novo* appeal required by local La Crosse rules (but not the Wisconsin statutes).  In other counties, a party can simply write a letter to the court, requesting an appeal for no cost.  In Dane County, if the Guardian ad Litem needs to continue his/her services at the *de novo* hearing, then the parties usually share equally the cost of the GAL bill, but there is no cost to the parties for any further work done by the

9

03/30/2010 13:16 FAX 608 873 4963    Case 3-10-00019-rdm  Doc 12   Filed 04/02/10   Entered 04/02/10 14:24:22   Desc Main  SCHWARZ LAW  @018

Document    Page 24 of 32

Assessment Team, as ordered in La Crosse County. Yet, in La Crosse County, the full $5,000 cost is to be borne by Ms. Zimmerly. As a stay-at-home parent, she simply does not have such monies, as said cost is prohibitive for most people.

V.    **CONCLUSION:**

Ms. Zimmerly respectfully requests that as Chief Judge, you review this matter in La Crosse County, as she does not believe that the matter has been handled properly by the Custody Assessment Team or Commissioner Doyle and she is concerned about a *de novo* hearing in the same courthouse. Her summary concerns are as follows:

A.   When the counselor, Bonnie Sacia, involved called Ms. Zimmerly a liar on numerous occasions and Commissioner Doyle did not address the issue in a hearing;

B.   When the Guardian ad Litem did not take action when Ms. Zimmerly called his attention to serious matters that needed to be addressed;

C.   When Commissioner Doyle tells Ms. Zimmerly's attorney that she tried to "micro-manage" the case because the she believed and acted upon the premise that the GAL and the Assessment Team should be informed of serious concerns and expected that there would be responses to such concerns;

D.   When the Commissioner herself sets forth an Order without making Findings pursuant to the pertinent statutes and case law governing the case and instead merely states that the "status quo presumption has been overcome no matter what statute the case is under"; and

E.   When the entire legal matter is being tried in a court atmosphere that has at the very least an appearance of conflict(s) of interest which when brought to the Commissioner's attention were merely dismissed as insignificant.

Dated this 2d day of February 2, 2009.

SCHWARZ LAW OFFICE
Attorney for Heather Zimmerly, n/k/a Stevens

JOAN I. SCHWARZ
SBN 1018696

DRAFTED BY:
SCHWARZ LAW OFFICE
Attorney Joan I. Schwarz
701 W. Jefferson Street
Stoughton, WI 53589
(608) 873-1680
(608) 873-4963 (facsimile)

10

05/04/2009 11:51 FAX  7820923    BOSSH...    EXHIBIT C



Attorneys and Counselors at Law

Serving Businesses and Families Since 1900

Wisconsin | Minnesota | Iowa

John Bosshard (1920-1970)
Sabina Bosshard
George Parke III
Joseph J. Connell
Laura J. Seaton
Stephan A. Rogge

Jason Goldstein
Darla A. Kruoska
Andrew R. Bosshard
Bennett A. Myers

# bosshard | parke ltd.

June 4, 2009

**BY FAX ONLY AT (608) 873-4963**

Attorney Joan Schwarz
Schwarz Law Office
701 W Jefferson
PO Box 203
Stoughton, WI 53589-0203

**RE: In re the Paternity of GMS**
**La Crosse County Case No.: 05-PA-147**

Dear Joan:

Your client's Motion for De Novo Hearing was filed on March 2, yet no deposit toward the Custody Assessment Team's fees and costs for its post-recommendation hearing work has been made. As you know, there is an order, filed May 13, directing that $10,000.00 be deposited toward those fees and costs. At this time, we are ceasing work on this file, and will resume preparation for the de novo hearing, including your inspection of the Team file, once the deposit is made.

As you have pointed out, the Order for Custody Assessment Fees signed by Commissioner Doyle on April 22 was, for some reason, not filed until May 13. Recognizing that fact, I will assume that the Order intends for your client to make the $10,000.00 deposit 30 days from May 13, rather than April 22. However, if the deposit is not made by June 12, 2009, I will move for dismissal of the de novo review, and for judgment for fees incurred to date.

Thank you.

Sincerely,

**BOSSHARD PARKE, LTD.**

Bennett A. Myers

BAM:lb

www.bosshardparkelaw.com

**Main Office**
P.O. Box 966
505 King, Suite 334
La Crosse, WI 54602-0966
608.782.1469
Fax: 608.784.1561

**Branch Office**
113 S. Water St.
Sparta, WI 54656
619.265.5076
Fax: 608.269.5077

cc:  Bonnie Sacia
     Kimberly Erickson-Nichols

EXHIBIT
D

STATE OF WISCONSIN          CIRCUIT COURT          LA CROSSE COUNTY
                          FAMILY COURT BRANCH

In re the paternity of:
**Gracie Marie Zimmerly**
n/k/a Sobkowiak

**State of Wisconsin**                    La Crosse County WI          **STIPULATION AND ORDER**
 -and-                                        **FILED**

                                          AUG 1 3 2009
**Paul Charles Sobkowiak**                                             **Case No.  05 PA 147**
Petitioner                              PAMELA RADTKE
                                        CLERK OF COURTS

 -and-                                                                 **Case Code: 40501**

**Heather Leigh Zimmerly**
n/k/a Heather Leigh Stevens,
Respondent

---

### STIPULATION AND ORDER

**IT IS HEREBY STIPULATED AND AGREED** between the parties (hereinafter referred to as "parent," and approved by petitioner's and respondent's counsel, that the following terms and conditions shall constitute the terms of an Order in said action.

WHEREAS, a Stipulation and Judgment of Paternity was issued herein on December 19, 2005; and

WHEREAS, a Stipulation and Order were entered herein on July 19, 2006; and

WHEREAS, an Order was orally rendered upon recommendation of the Custody Assessment Team and Guardian ad Litem on January 6, 2009 (a written Order has not been entered); and

WHEREAS, the parties agree that it is appropriate to withdraw all pending matters before the court including the hearing scheduled on August 3, 2009 before The Honorable Judge Pasell and the *de novo* hearing scheduled for August 31 and September 1, 2009 before The Honorable Judge Pasell; and

WHEREAS, Heather agrees to drop the restraining Order against Paul; and

WHEREAS, the parties agree to amend the oral Order of January 6, 2009 and enter into a complete agreement about all the needs of their minor child, Gracie, and make this the Order of the Court.

NOW THEREFORE, the parties stipulate as follows:

A.    **Vital Statistics**

1.    Paul Sobkowiak, was born November 12, 1969, has a social security of XXX-XX-7533, and currently resides at N8345 Flaten Road, Holmen, WI 54636.

1

2.      Heather L. Zimmerly, n/k/a, Heather Stevens, was born April 6, 1974, has a Social
        Security No. XXX-XX-6377, and currently resides at 309 S. Walker St., Adams, WI
        53910

3.      Gracie Marie Sobkowiak, f/k/a Zimmerly, was born October 27, 2005 in the City of
        Baraboo, County of Sauk, State of Wisconsin, and has social security number XXX-
        XX-9373.

**B.    Legal Custody**

1.      The parents shall have joint legal custody of Gracie.

2.      Subject to the terms of this Stipulation, both parents shall have access to Gracie's
        medical, dental, and school records, as well as to any court or treatment
        records and any records relating to protective services. Both parents shall have the
        right to consult with school officials concerning Gracie's welfare educational status
        and progress, out of school activities including access to pupil records pursuant to
        §118.125, Wis. Stats., and to acquire all school-related reports, including report cards
        and all information regarding events involving her.

3.      Each parent shall be listed as a contact at school and each party should attend
        parent/teacher conferences and the like.

4.      Both parents shall be able to involve Gracie in outside activities, taking into account
        various schedules, costs and expenses.

**C.    Physical Placement Schedule**

1.      Paul has primary physical placement of Gracie, subject to the Heather's periods of
        physical placement according to the following schedule in Para. C (2).

2.      Heather's physical placement schedule is as follows:

        a.      **Until July 1, 2010 (Gracie is in daycare):**
                1)      Week One:  Wednesday at 1:00 PM until Friday at 5:30 PM.
                2)      Week Two:  Friday afternoon at 1:00 PM until Sunday at 4:30 PM

        b.      **After July 1, 2010 (Gracie begins school):**
                1)      After July 1, 2010 Heather shall have Gracie every other weekend from
                        Friday when the school day ends through Sunday at 4:00 PM.

                2)      Heather shall have extended school weekends to be mutually agreed
                        upon by the parties.

2

3) Heather shall have extended placement during school breaks, such as Thanksgiving break, Christmas break, Easter break and spring break to be mutually agreed upon by the parties.

4) Heather shall have extended placement periods every summer to be mutually agreed upon by the parties.

c. The parents intend for this schedule to be flexible and if they mutually agree, may change the physical placement schedule without further order of the court.

**D.** **Holiday Physical Placement Schedule**:

1) The parents mutually agree to share the holidays and will work out their own schedules.

2) Heather will have Gracie on Christmas day, unless Paul has his Christmas on Christmas day. Then Heather will have Gracie on Christmas Eve

**E.** **Vacations**:

The parents will discuss vacation plans and inform each other within a reasonable period of time of their choices for their vacation periods with Gracie. The length of vacation time and the timing of the vacation periods will be mutually agreed upon by the parents.

**F.** **Birthday, Mother's Day and Father's Day Placement**:

1) Gracie's birthday will be shared by the parties as they mutually agree.

2) Heather shall always have placement of Gracie on Mother's Day and Paul shall always have placement of Gracie on Father's Day, after which the physical placement periods resume as scheduled if the parents so choose.

3) Each parent shall have placement of Gracie on the parent's birthday, unless the parents mutually agree on another schedule, after which the physical placement periods resume as scheduled.

**G.** **Telephone Access to Gracie**:

1) Gracie will be allowed liberal phone access to the other parent during any physical placement time with either Paul or Heather.

2) If either parent is taking Gracie out of town overnight during his or her placement, he or she shall provide the other parent with notice and a phone number in case of an emergency.

**D.    Transportation:**

The parents will share equally in the transportation of Gracie in order to effectuate the periods of physical placement. The current pick-up and drop-off arrangement will remain the same unless the parents agree another to another arrangement. The parents may do so without further order of the court.

**E.    Child Care Responsibility:**

The parent having the physical placement period of Gracie shall be responsible for securing child care during these periods.

**F.    Health Care of Children:**

Subject to the terms of this Stipulation, both parents shall have the right to consent to reasonable and necessary health care for Gracie and both shall have the right to consult with health care providers. Paul and Heather will talk about major medical decisions pertaining to Gracie and try to reach a compromise. Should the parties disagree about any major medical decisions, Paul has impasse-decision making authority.

**G.    Support:**

1.    Both parents agree to waive the statutory 17% income from all sources of employment based on the revised Child Support Guidelines, DWD 40.04(2), effective January 1, 2004.

2.    Heather will pay for one-half of Gracie's clothing, school activities and extra-curricular activities.

**H.    Exemptions:**

Based on no child support award to either party, Paul shall claim Gracie as an exemption on his federal and state income taxes each year as long as there is no child support order.

**L.    Medical and Dental Insurance for Family:**

1.    Paul shall provide medical insurance for Gracie as provided through his employment and shall be responsible for payment of said insurance.

2.    The parents shall agree to share equally in any un-reimbursed medical and dental costs for Gracie and shall reconcile these costs every three (3) months.

**M.    Restraining Orders.**

Both parents shall be enjoined and restrained from harassing or interfering with the personal liberty of the other in any way, or from going on the premises occupied by the other as a dwelling, except pursuant to invitation of prearranged periods of physical placement.

4

**N.** **Requirements of the Court:**

Failure to abide by this Order is punishable as contempt of court pursuant to Chapter 785, Wis. Stats.

Paul Charles Sobkowiak
Petitioner

Dated: 7/28/09

Heather Leigh Zimmerly
Respondent

Dated: 8-7-09

**HUESMANN LAW OFFICE, S.C.**
Attorney for Petitioner

Mark Huesmann
SBN 1024674

Dated: 7/28/09

**SCHWARZ LAW OFFICE**
Attorney for Respondent

Joan I. Schwarz
State Bar No. 1018696

Dated: 8-10-09

**BOSSHARD/PARKE Ltd.**
Guardian ad Litem

Bennett A. Myers
SBN 1056184

Dated: 7/31/09

# ORDER

Based on the Stipulation of the parties, which has been approved by petitioner's, Attorney Mark Huesmann on behalf of Paul C. Sobkowiak, and respondent's attorney, Joan I. Schwarz, on behalf of Heather L. Zimmerly, n/k/a, Heather Stevens, and the Guardian ad Litem, Bennett A. Myers,

**IT IS HEREBY ORDERED** that the terms and conditions of the parties' Stipulation shall be entered as and for an Order in this action.

Dated this _____ day of _____,2009.

BY THE COURT:

8-12-09

_____
The Honorable Judge Hasell

Drafted By:
SCHWARZ LAW OFFICE
701 W. Jefferson Street
Stoughton, WI   53589
(608) 873-1680

6



*Office of Corporation Counsel*
*County of La Crosse, Wisconsin*
County Administrative Center
400 4th Street North • Room 2350 • La Crosse, Wisconsin  54601-3200
(608) 785-9577 • Fax (608) 785-5689
www.co.la-crosse.wi.us



William A. Shepherd
Corporation Counsel

David L. Lange
Deputy
Corporation Counsel

Joan L. DeVore
Assistant Deputy
Corporation Counsel

April 1, 2010

Clerk of US Bankruptcy Court
US Federal Courthouse
120 N. Henry Street
PO Box 548
Madison, WI  53701

Re:    In re Adam Kenneth Stevens and Heather Leigh Stevens, Debtors
       County of La Crosse v. Adam Kenneth Stevens and Heather Leigh Stevens
       Case No. 3-09-16401-rdm
       Adversary Case No. 3-10-00019-rdm

Dear Clerk:

Enclosed please find the original Pretrial Statement in the above-entitled matter.  Please file the
same.   A copy has been sent this date to Attorney Joan Schwarz, attorney for the debtors.
Thank you.

Very truly yours,

David L. Lange
Deputy Corporation Counsel

DLL/sll

Enclosure

CC:    Attorney Joan I. Schwarz, (w/encl.)

*An Equal Opportunity Employer*